**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2979
_____

IN RE: VERSO CORPORATION, et al.,

Debtors


UPPER PENINSULA POWER COMPANY,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 1-17-cv-00577)
District Judge: Hon. Maryellen Noreika
_____

Submitted Under Third Circuit LAR 34.1(a)
April 23, 2020
_____

Before: AMBRO, SHWARTZ, and BIBAS, Circuit Judges.

(Filed: April 27, 2020)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

This appeal arises out of the Chapter 11 bankruptcy of Verso Corporation and certain of its affiliates and subsidiaries (together, the "Debtors"). Upper Peninsula Power Company ("UPPCO"), a creditor, appeals the District Court's order affirming an order of the Bankruptcy Court denying UPPCO's motion for allowance and payment of an administrative expense claim. For the reasons set forth below, we will affirm.

I

The Debtors operate paper mills and successfully reorganized in 2016 pursuant to Chapter 11 of the Bankruptcy Code. UPPCO provided electricity to the Debtors and was a creditor.

A

UPPCO and other electricity-generating facilities are designated System Support Resources ("SSR"). As such, they are required by Midcontinent Independent System Operator ("MISO")[1] to provide electricity and continue operations to maintain the reliability of the electrical grid. Costs associated with this continued maintenance are calculated by MISO, approved by the Federal Energy Regulatory Commission ("FERC"), and shared among electricity-generating facilities. The electric-generating facilities, in turn, pass on those costs to their customers as part of their regular billing.

---

[1] MISO runs a large wholesale electric market and enforces the continued operations of electricity-generating facilities like UPPCO's.

2

FERC required MISO to revise its SSR cost allocation method in February 2015. MISO's May 2015 revised allocation imposed higher charges on UPPCO and other electric companies for SSR costs for electrical services provided between June 15, 2014 and June 14, 2015. In September 2015, FERC conditionally approved the SSR cost reallocation and instructed MISO to complete a compliance filing. FERC accepted the compliance filing on May 3, 2016. UPPCO thereafter lodged a protest with FERC, contending it was allocated a larger share of the SSR charges. In their June 2015 protest filing, UPPCO asserted that with "[w]hat little information UPPCO received from MISO," they discerned that they would "pay up to 300% . . . [or] 400% per month more of costs," resulting in UPPCO's customers "paying millions more in SSR costs annually." App. 504. The Debtors were among such customers to be affected.

B

Separate from the SSR cost recalculation, in January 2016, the Debtors filed Chapter 11 petitions in the United States District Court for the District of Delaware. Thereafter, UPPCO filed proofs of claim for pre-petition delivery of energy to the Debtors, but did not mention the SSR cost reallocation in its claims. A reorganization plan was created, and the Debtors successfully reorganized on July 15, 2016 (the "Effective Date").

While the cure amount due to UPPCO was initially disputed, the parties resolved the dispute in an August 2016 court-approved stipulation (the "Stipulation"). The

3

Stipulation set forth the amount of UPPCO's claims and the cure amount for the Debtors.

The Stipulation further provided:

> Any and all claims held by UPPCO arising on or before the Effective Date, including, without limitation, the UPPCO Claims, whether or not evidenced by one or more filed proofs of claim, against any of the Debtors are hereby disallowed and expunged in their entirety without need for further action by UPPCO or the Reorganized Debtors or further Bankruptcy Court approval.

App. 392.[2]

C

In 2017, UPPCO filed a motion seeking payment of its SSR claims as an administrative expense. The Debtors objected, asserting that UPPCO had released all claims under the Stipulation. The Bankruptcy Court denied the motion. The Court held (1) the Stipulation "expunge[ed] and disallow[ed] 'any and all claims held by UPPCO arising on or before the Effective Date,'" including the SSR Cost Reallocations; and (2) that "it is clear . . . that the SSR Cost Reallocations obligated UPPCO by September 2015." App. 530. UPPCO appealed to the District Court. The District Court affirmed, finding that the SSR claims arose pre-Effective Date and were disallowed by the Stipulation. UPPCO now appeals the District Court's order.

---

[2] The Stipulation defined the term "UPPCO Claims" broadly to encompass all of UPPCO's administrative-expense and general-unsecured claims. See App. 390.

II[3]

The Bankruptcy Court and the District Court correctly concluded that the Stipulation extinguished all of UPPCO's claims arising before the Effective Date, and therefore that any administrative expense claim to recover the SSR amount was not permitted.

A

The Stipulation stated that the parties agreed to "disallow[] and expunge[]" "[a]ny and all claims held by UPPCO arising on or before the Effective Date." App. 392. The Stipulation is a contract. When interpreting a contract, a court must first decide "whether the contract is unambiguous with respect to the question disputed by the parties." Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks and citation omitted).[4] "Where a contract is unambiguous, that is, where its words convey a definite and precise meaning upon which reasonable minds could not differ, its interpretation can be determined as a matter of law." Bolt Elec., Inc. v. City of New York, 223 F.3d 146, 150 (2d Cir. 2000); see also Bailey v. Fish & Neave, 868 N.E.2d 956, 959 (N.Y. 2007). "[T]he objective of contract interpretation is to give effect to the expressed intentions of the parties," the best evidence of which is "what they

_____

[3] The District Court had jurisdiction over the bankruptcy appeal under 28 U.S.C. § 158(a)(1). We exercise appellate jurisdiction pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. "On appeal, we stand in the shoes of the District Court . . . ." In re Somerset Reg'l Water Res., LLC, 949 F.3d 837, 844 (3d Cir. 2020) (internal quotation marks and citation omitted). We review findings of fact made by the bankruptcy court for clear error, and we review questions of law de novo. Id.

[4] New York law governs the Stipulation.

5

say in their writing." Law Debenture Tr. Co., 595 F.3d at 467 (emphasis omitted) (internal quotation marks and citations omitted). "Thus, a written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002).

The parties appropriately agree that the language of the Stipulation is clear and unambiguous. The Stipulation's plain language "disallowed and expunged" "[a]ny and all" of UPPCO's claims arising before the July 15, 2016 Effective Date "without limitation." App. 392. This broad and unambiguous waiver of claims meant that UPPCO agreed to receive no further payment for any claims that arose before the Effective Date,"whether or not evidenced by one or more filed proofs of claim, against any of the Debtors." App. 392.

B

In addition, the SSR claims arose before the Effective Date. A "claim" is "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). We interpret the word "claim" with "the broadest available definition," FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003) (quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)), reflecting Congress's "unambiguous[] . . . intent to address all possible legal obligations in defining a bankruptcy claim," Kilbarr Corp. v. Gen. Servs. Admin., Office of Fed.

6

Supply & Servs. (In re Remington Rand Corp.),, 836 F.2d 825, 829 (3d Cir. 1988).

"[O]ur focus should not be on when the claim accrues . . . but whether a claim exists." In re Rodriguez, 629 F.3d 136, 142 (3d Cir. 2010) (citation omitted). Indeed, "a claim can exist under the [Bankruptcy] Code before a right to payment exists under state law." Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.), 607 F.3d 114, 121 (3d Cir. 2010) (en banc) (internal quotation marks omitted).

While UPPCO's SSR claims may have been unliquidated until 2016, UPPCO was aware of the claims since February 2015, with the initial FERC order, and those claims became more concrete in May 2015 when MISO submitted its plan for cost reallocation, as well as in September 2015 when FERC found that the proposed cost reallocation "generally complie[d]" with FERC's directives. App.477. Indeed, in their June 2015 protest filing to FERC, UPPCO asserted that with the "information UPPCO received from MISO," they understood that they would "pay up to 300% . . . [or] 400% per month more of costs," resulting in UPPCO's customers "paying millions more in SSR costs annually." App. 504. This protest demonstrates that the SSR claims were known to UPPCO in June 2015 at the latest, even though the exact value of the claim was then undetermined. See In re Ruitenberg, 745 F.3d 647, 653 (3d Cir. 2014) ("[T]he contingent nature of the right to payment does not change the fact that the right to payment exists . . . and thereby constitutes a 'claim' for purposes of § 101(5)." (alteration and omission in original) (citation omitted)). Additionally, the cost reallocation was for services provided to the Debtors from June 15, 2014 through June 14, 2015, which would

7

capture claims covered by the Stipulation.[5]  Thus, the Bankruptcy Court and the District Court correctly found that the claims arose before the Effective Date and the Stipulation disallowed them.[6]

IV

For the foregoing reasons, we will affirm.

---

[5] Construing the SSR charges as pre-petition claims does not undermine the objectives of the Bankruptcy Code.  UPPCO attempts to frame the SSR obligation as a moving target, part of "ongoing regulatory obligations," that should not be included in the claims reconciliation process because they would incentivize creditors like UPPCO demanding much more to cure debtors' contract obligations.  Appellant's Br. at 34-36.  We discern no basis for this concern, nor do we hold that all SSR charges will be treated as pre-petition claims in every bankruptcy case.  Rather, we conclude that the SSR charges here arose before the Effective Date and that the Stipulation discharged Debtors' obligations to UPPCO.

[6] Because we hold that the Stipulation extinguished the SSR claims, we need not determine whether UPPCO satisfied its burden to show that those claims constituted an administrative expense under 11 U.S.C. § 503.